## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **DORAL BANK** | |
| **Plaintiff,** | |
| **v.** | **CIVIL NO.  14-1570 (PAD)** |
| **FEDERAL DEPOSIT INSURANCE COMPANY; <u>et al.</u>** | |
| **Defendants.** | |

### OPINION AND ORDER

Doral Bank initiated this action seeking declaratory and injunctive relief against enforcement of a final and non-appealable Judgment and orders of the Fajardo Part of the Court of First Instance of Puerto Rico (Docket No. 1 at ¶¶ 8 and 32).[1]  Careful examination of applicable authority confirms this Court lacks subject matter jurisdiction to entertain the action.  Judicial intervention would exceed the scope of the Court's authority under federal banking laws.[2]  Therefore, the case must be dismissed.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

#### A.  <u>State Judicial Proceedings</u>[3]

Doral is a federally insured banking institution dully organized and authorized to do business in Puerto Rico.  In 2005, it granted certain credit facilities to Social Interest Growth

---

[1]  In the pleadings, the parties refer to the Court of First Instance as "Fajardo Court" or "CFI." In this Opinion and Order, that Court will be referred to as "state court."

[2]  In light of this conclusion, the Court need not consider defendants' alternate arguments that dismissal or abstention are appropriate under the <u>Rooker-Feldman</u> doctrine (<u>see</u>, <u>Rooker</u> v. <u>Fidelity Trust Co.</u>, 263 U.S. 413 (1923) and <u>District of Columbia Court of Appeals</u> v. <u>Feldman</u>, 460 U.S. 462 (1983)); <u>Younger</u> v. <u>Harris</u>, 401 U.S. 37 (1971); *Res Judicata;* Judicial Estoppel; and the Anti-Injunction Act, 28 U.S.C. § 2283.

[3]  The Court rehearses only the procedural events that took place before state court that are relevant to put this Opinion and Order into perspective.

Associates Corporation ("SIGA") collateralized by, among other things, mortgages on certain real estate owned by SIGA.  SIGA operated a wastewater treatment plant in one of the properties that served as collateral.

In November 2008, after SIGA defaulted on its obligations, Doral sued SIGA in state court for collection of monies and foreclosure.  In June 2009, it obtained a Judgment in its favor.  SIGA, however, failed to pay Doral the monies owed.  Doral did not foreclose its mortgage on the property.  Upon or immediately after SIGA's default, SIGA abandoned the property and failed to maintain or continue operation of the wastewater treatment plant.  The unattended plant began to release untreated sewage water onto the property, which then flowed into adjacent land.

In February 2011, Doral initiated a different but related action against SIGA in state court, seeking entry of a preliminary and permanent injunction to avoid the deterioration of the mortgaged property.[4]  To that end, it asked the court to order SIGA to maintain and operate the wastewater treatment plant and to take all necessary measures to avoid or remedy the environmental harm it was causing or, alternatively, for the designation by the court of an administrator to take possession and protect the mortgaged property.

In April 2012, the state court entered Judgment in favor of Doral, ordering SIGA, *inter alia*, to correct all deficiencies in the treatment plant within sixty (60) days; to operate the wastewater treatment plant; and to file periodic reports with the court stating its compliance with the terms of the Judgment (Docket No. 1, Exh. 3).  Further, it stated that in the event SIGA failed to comply with the orders that were made part of the Judgment, the court would place the

---

[4] Doral acted pursuant to Article 169 of the Puerto Rico Mortgage Law, P.R. Laws Ann. tit. 30 § 2565.  Article 169 provides that "[w]hen the mortgaged property deteriorates, substantially depreciating its value, because of the owner's fault, negligence or consent, the creditor may request from the Court of First Instance in the Part where the property is located a pertinent resolution ordering the owner to do or not to do what may be in order, to avoid or to remedy the damage. If, in spite of said order, the owner continues to let it deteriorate, the Court may decree judicial administration of the property." Id. See also, Docket No. 2 at p.3.

wastewater treatment plant under receivership and order Doral to cover the costs and expenses necessary for the implementation of the Judgment, and allow Doral to recover those expenses from SIGA. Id.

Doral did not seek review of the Judgment, which subsequently became final and non-appealable.  Approximately four (4) months later, in August 2012, it entered into a Consent Order with the Federal Deposit Insurance Corporation ("FDIC") under 12 U.S.C. § 1818(b).  See, *In the Matter of Doral Bank San Juan, Puerto Rico* (Insured State Nonmember bank), FDIC-12-134b (Docket No. 1, Exh. D). Among other things, the Consent Order prohibits Doral from extending, directly or indirectly, any additional credit to, or for the benefit of, any borrower whose loan or other credit is more than 90 days delinquent or has been classified as "Substandard," "Doubtful," or is listed for "Special Mention" in the FDIC's Report of examination.  Id.

In December 2012, after SIGA notified the state court that it lacked the financial resources to comply with the Judgment, the court placed the wastewater treatment plant under receivership. As anticipated in the April 2012 Judgment, the court ordered Doral to employ a court-appointed administrator, and to perform all work necessary to ensure the operation of the wastewater treatment plant in compliance with applicable law and regulations (Docket No. 1, Exh. E). Additionally, it required Doral to disburse the monies necessary to complete all repair and maintenance work at the wastewater treatment plant.

On January 8, 2013, Doral requested reconsideration of the Order (Docket No. 41, Exh. 2), which the state court denied on January 10, 2013.  Doral then sought discretionary review of the

Order with the Puerto Rico Court of Appeals and the Puerto Rico Supreme Court, but neither court granted the relief requested.[5]

On March 21, 2014, the Environmental Quality Board of Puerto Rico ("EQB") moved to intervene, and requested sanctions against Doral for Doral's failure to assume financial responsibility for the operation of the wastewater treatment plant. The court ordered Doral to comply with the 2012 Order or face a daily penalty of $1,000.00 from the date it was first ordered to rehabilitate the wastewater treatment plant in 2012 (Docket No. 2 at p. 4).

On April 15, 2014, Doral filed an Urgent Motion for Relief of Judgment under Rule 49.2 of the Puerto Rico Rules of Civil Procedure and a separate Informative Motion. In these motions it informed the state court, for the first time, of the Consent Order it had entered into with the FDIC, arguing that the Consent Order barred Doral from complying with the state court's Order. In Doral's view, requiring it to disburse funds to operate the wastewater treatment plant would subject Doral to substantial monetary penalties from the FDIC for noncompliance with the Consent Order.

On May 15, 2014, the state court denied Doral's request, characterizing it as legally "inappropriate, since it was not filed within the final term of six months provided by Rule 49.2 of Civil Procedure, and in the alternative, since there [were] no legal grounds that would justify it" (Docket No. 33 at p. 23). The court stated that the Judgment untimely challenged by Doral was "final and unappealable;" noted that the Consent Order submitted by Doral in support of its motion (only a portion of which was submitted to the court) did not prohibit Doral from disbursing funds to comply with a "final and unappealable court decision;" and expressed that:

---

[5] In rejecting Doral's petition, the Court of Appeals noted that the Order was based on the Judgment of April 2012, which was final and not appealable. The Supreme Court declined review.

> The foregoing [portion of the Consent Order] reveals that what is being prohibited under the above-referenced clause is the extension or issuance of additional credit to SIGA, which is not taking place by way of the Order for Court Administration.  This case merely deals with a disbursement of funds to comply with a court decision.  Therefore, Doral is not in any way prevented from complying, once and for all, with the order of the Court.
>
> We should also clarify that, during the Hearing held on April 1, 2014, Doral Bank accepted the request made by the [EQB] and did not raise the argument that it is now belatedly raising.

Id. at pp. 25-26.

Finally, the court reasserted Doral's obligation to comply with its order within five (5) days, warning Doral that failure to comply with the order would result in a daily penalty of $1,000.00 for each day retroactive to December 21, 2012.  Id.  Doral, however, failed to comply with the court's Order.   On July 7, 2014, at the EQB's request, the court further ordered Doral to identify, in five (5) days, all measures taken to ensure compliance with its Order.  It is unclear whether Doral complied with that Order.  This suit followed.

B.  Federal Judicial Proceedings

On July 22, 2014, Doral initiated the present action against the FDIC, the Court of First Instance, the EQB, and SIGA, seeking declaratory and injunctive relief against enforcement of the state court Judgment and related orders for contravening the Consent Order entered into with the FDIC.  Id. at ¶¶ 8, 16-17, 32.[6]  According to Doral, given that the SIGA loan is more than 90 days delinquent, Section 4(e) of the Consent Order prohibits any advance of credit, directly or indirectly to SIGA.  Id.  Thus, it claims, the state court's Judgment and orders would necessarily require Doral to breach its obligation under the Consent Order with the FDIC, by requiring Doral to assume financial responsibility for the operation of SIGA's wastewater treatment plant.  But at the

---

[6]  The Court will refer to the EQB and to the Court of First Instance collectively as "Commonwealth Defendants."

same time, not complying with the state court Judgment and orders would carry a $1,000.00 fine for each day Doral is found to be in noncompliance with the Order. Id. at ¶ 23. Consequently, it asked this Court to declare Doral's obligations under the FDIC Consent Order and to issue an injunction permanently staying the enforcement of the state court's Judgment and orders. Id. at ¶¶ 2-5.

The same day, Doral filed an "Ex Parte Motion for Temporary Restraining Order and Motion Requesting Injunctive Relief Pursuant to Fed.R.Civ.P.65(a)" (Docket No. 2), which the Court denied on July 23, 2014, expressing doubts as to its jurisdiction (Docket No. 15). On August 4, 2014, Doral filed a "Motion for Reconsideration of Order Denying Temporary Restraining Order and Motion for Expedited Briefing Schedule" (Docket No. 19), requesting the Court to reconsider its order denying the TRO Motion, expedite the briefing schedule and set a hearing. The next day, the Court granted in part and denied in part Doral's motion (Docket No. 20).

While denying Doral's request for a reconsideration of the order denying the TRO, the Court granted Doral's request to expedite the briefing schedule before issuing a definite ruling on the jurisdictional question; ordered each party to file a memorandum of law on various jurisdiction-related issues; and scheduled a hearing for August 14, 2014 at 9:30 a.m. to argue the jurisdictional question. Id.

Following an emergency motion for extension of time and continuance of the argumentative hearing filed by the Commonwealth Defendants, the Court extended the deadline to submit the memoranda until August 15, 2014 at 5:00 p.m. and rescheduled the hearing for August 20, 2014 at 9:30 a.m. All parties filed their respective memorandum of law (Docket Nos.

37, 38, 40 and 41).  Defendants challenged the Court's subject matter jurisdiction.  The FDIC additionally requested dismissal of the action under Fed. R. Civ. P. 12(b)(6).[7]

During the hearing, the parties had ample opportunity to argue their respective positions, and were granted until August 25, 2014 to file supplementary briefs.  Doral, in turn, was ordered to provide the Court with the date of the Supreme Court of Puerto Rico's denial of its discretionary review (*Certiorari*) Petition and to respond to the FDIC's arguments under Fed.R.Civ.P. 12(b)(6). The parties filed their corresponding briefs at Docket Nos. 45-47 and 49.  Doral responded to the FDIC's Motion to Dismiss at Docket No. 48.

Evaluation of the motions filed to date, the issues discussed at the hearing, the supplemental briefs and applicable law confirms that Doral's complaint must be dismissed for lack of matter jurisdiction.

## II.      JURISDICTIONAL STANDARD

Federal courts are courts of limited jurisdiction.  Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994); Erwin Chemerinsky, Federal Jurisdiction, 265 (Aspen Publishers, 5th ed. 2007).  They possess only that power authorized by the Constitution and statute. Willy v. Coastal Corp., 503 U.S. 131, 136-137 (1992). For the same reason, they may assume only that portion of the Article III judicial power which Congress, by statute, entrusts to them.  It is up to Congress to determine when, and under what conditions federal courts can hear cases.  Bowles v. Russell, 551 U.S. 205, 212-213 (2007).

---

[7] SIGA also invited the Court to examine the Anti-Injunction Act (Docket No. 37 at pp. 10-14); claimed that Doral "…conjured the fictitious dispute to create a scenario by which it can collaterally attack the final judgment obtained in State Court [   ]." Id. at pp. 16-20; and argued in the alternative that abstention would be warranted under Younger should the Court conclude it has jurisdiction over Doral's complaint.  Id. at pp. 18-19.

Congressional authority includes the power of investing inferior federal courts with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good.  Lockerty v. Phillips, 319 U.S. 182, 187 (1943); Abercrombie v. Office of the Comptroller of the Currency, 833 F.2d 672, 674 (7th Cir. 1987).  That jurisdiction is not to be expanded by judicial decree. Kokkonen, 511 U.S. at 37.  It is to be presumed that a cause lies outside this limited jurisdiction. Id.  The burden of establishing that subject matter jurisdiction exists rests upon the party asserting jurisdiction.  Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998); Aversa v. United States, 99 F.3d 1200, 1209 (1st Cir. 1996).

Doral contends the Court has jurisdiction pursuant to 28 U.S.C. §1331.[8]  In its view, the present action arises under the FDIC Act, 12 U.S.C. §1811, and under 12 U.S.C. §1819(b)(2).  See, Docket No. 1 at ¶¶ 6 and 8.[9]  None of these provisions confers subject matter jurisdiction over this case.

### III.   DISCUSSION

A.  FDIC Act

In response to an epidemic of bank closures, Congress established the FDIC in 1933 to restore confidence in the nation's banking system by creating a system of deposit insurance.  See, Banking Act of 1933, 48 Stat 163.  Subsequent legislation has expanded the FDIC's role in this area.  See e.g. FDIC Act of 1950, 64 Stat. 873; Financial Institutions Supervisory Act of 1966 ("FISA"), Pub. L. No. 89-695, 80 Stat. 1028; Financial Institutions Reform, Recovery, and

---

[8]  This provision grants district courts original jurisdiction in all civil actions arising under the Constitution, laws or treaties of the United States.

[9]  Doral also invoked the Declaratory Judgment Act, 28 U.S.C. § 2201.  See, Docket No. 1 at ¶ 8.  The Act does not, however, create an independent basis for federal subject matter jurisdiction.  See, Skelly Oil Co. v. Phillips Petroleum, 339 U.S. 667, 671-672 (1950); Heydon v. Mediaone of S.E. Michigan, Inc., 327 F.3d 466, 470 (6th Cir. 2003).

Enforcement Act of 1989 ("FIRREA"), Pub. L. No. 101-73, 103 Stat. 183; Federal Deposit Insurance Corporation Improvement Act of 1991("FDICIA"), Pub. L. 102-242, 105 Stat. 2236; Federal Deposit Insurance Reform Act of 2005, Pub. L. No. 109-171 ("FDIRA"); and Financial Services Regulatory Relief Act of 2006 ("FSRRA"), Pub. L. 109-351 (2006).[10] For a detailed discussion of the FDIC's history and the legislative story behind its creation, see M. Schroeder, supra, § 1.2[4] and § 11.01.

With this authority, the FDIC may undertake a variety of enforcement actions against institutions or affiliated parties that violate laws or engage in unsafe and unsound practices, including cease-and-desist orders, monetary penalties, termination of deposit insurance, and suspension or removal of individuals from participating in the banking industry. See, 12 U.S.C. §§ 1818(a) (termination of deposit insurance), 1818(b) (cease and desist proceedings), 1818(c) (issuance of emergency/temporary cease and desist orders), 1818(e) (initiation of proceedings to suspend or remove individuals from participation in the banking industry), 1818(g) (suspension, removal and prohibition from participation orders), 1818(i) (civil money penalties), 1818(n)(ancillary provisions). Similarly, it may enter into formal agreements with depository institutions or institution-affiliated parties in which those institutions or persons undertake action or refrain from certain action in managing the affairs of their institutions, that otherwise would

---

[10] Among other things, FISA granted federal supervisory agencies the power to issue cease and desist orders; FIRREA expanded, enhanced, and clarified enforcement powers of federal financial-institution regulatory agencies, granting increased authority to regulators to impose civil penalties and easing banking agencies' standards for issuing temporary cease and desist orders, and gave the FDIC authority to act as receiver or conservator for failed institutions; FDICIA required federal banking agencies to set new standards for safety and soundness in certain areas, and increased federal oversight of federally-insured banks; FDIRA gave the FDIC power to adjust by inflation the amount of deposit insurance payable to depositors; and FSRRA clarified the discretionary authority of federal banking agencies to enforce conditions on the terms of agreements with depository institutions and institution affiliated parties. See, Milton R. Schroeder, The Law and Regulation of Financial Institutions, §§ 1.02[4], 1.02[6], 7.01[1], 10.01[2], 10.01[3], 11.01 (A.S. Pratt & Sons Group, 2012 update).

lead the agency to pursue formal cease and desist proceedings through the issuance of a Notice of Charges. See, 12 U.S.C. §1818(b).

Given the importance of the public interest underlying this legislation, Congress saw fit to prescribe specific statutory mechanisms for judicial review. To that end, it established a tripartite regime of review, found at 12 U.S.C. §1818. First, Section 1818(c)(2) provides that, within ten (10) days after service of a temporary cease and desist order, a holding company may seek an injunction in district court restraining enforcement of the order pending completion of the related administrative process. Second, pursuant to Section 1818(h) the courts of appeals are vested with exclusive jurisdiction to review final cease and desist orders on the application of an aggrieved party. Third, Section 1818(i)(1) empowers the FDIC and other federal banking agencies (as opposed to the regulated banking entity) to apply to the district court for enforcement of any outstanding order, whether temporary or final, specifying that "except as otherwise provided in this section no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under this section, or to review, modify, suspend, terminate, or set aside any such notice or order." 12 U.S.C. §1818(i)(1).

Consent Orders are orders issued under the authority of Section 1818(b), and fall squarely within the scope of Section 1818(i)(1)'s prohibition. See, Henry v. Office of Thrift Supervision, 43 F.3d 507, 512-513 (10th Cir. 1994)(applying Sec.1818(i)(1)'s jurisdictional bar to action related to consent order entered into with federal banking agency); Law Offices La Ley con John H. Ruiz, P.A. v. Rust Consulting, Inc., 982 F.Supp.2d 1307, 1311 (S.D. Fla. 2013)(same); Bakenie v. JP Morgan Chase, 2012 WL 4125890, *3-4 (C.D. Cal. Aug. 6, 2012)(same); Abercrombie v. Office of the Comptroller of the Currency, 641 F.Supp. 598, 600 (S.D. Ind. 1986)(same as to stipulated cease-and-desist order). The request at issue falls under the same category.

Doral has requested a declaration of rights and obligations under the Consent Order in light of the Judgment and subsequent orders issued by the state court.  See, Docket No. 1 at pp. 8-9; and Docket No. 47 at pp. 2-3.  The declaration would necessarily call for a review of the terms of the Consent Order, with the consequence of affecting its enforcement by the FDIC.  The request for relief need not be in direct contravention of the Consent Order to affect enforcement of the order.  Bakenie, 2012 WL 4125890 at *4.  But even Doral has acknowledged that to issue the declaratory relief, the Court will necessarily have to interpret the Consent Order, and may affect the FDIC's rights and obligations under the order.  See, Docket No. 19 at p. 5; and Docket No. 47 at p. 3.

In these circumstances, the statute's clear circumscription of jurisdiction would be seriously undermined, if not rendered wholly ineffectual, were it read not to apply to this action; an action having exactly the consequence the statute was meant to prohibit.  Given that Doral has pointed to no other provision in Section 1818 which would enable the Court to exercise jurisdiction notwithstanding the Section's blanket prohibition, nor argued that any of the specific exceptions to judicial review delineated in the statute applies, no jurisdiction exists in this case.

Doral contends this jurisdictional bar should not be applied because doing so would leave it without a judicial forum to request a declaration of rights and obligations under the Consent Order.  See, Docket No. 47 at p. 4.  The jurisdictional limitation seeks to prevent regulated entities from interfering with the federal enforcement process.  See, Ridder v. Office of Thrift Supervision, 146 F.3d 1035, 1039 (D.C. Cir. 1998); CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 741 (D.C. Cir. 1995); Groos Nat. Bank v. Comptroller of Currency, 573 F.2d 889, 895 (5th Cir. 1978).  Adopting Doral's interpretation would interfere with that process.

Section 1818 provides a detailed framework for regulatory enforcement and orderly review of the various stages of enforcement.  If in the FDIC's opinion an insured depository institution or

any of its directors have engaged in unsafe or unsound business practices or has violated a condition imposed by the FDIC, the FDIC may issue and serve upon such party a notice of charges constituting the alleged violation.   12 U.S.C. 1818(b)(1).   If so, the case is assigned to an Administrative Law Judge who conducts proceedings pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706, and the FDIC's Rules of Practice and Procedure, 12 C.F.R. § 308.   If not decided on summary disposition pursuant to 12 C.F.R. § 308.29, the case proceeds to an evidentiary hearing at the conclusion of which the parties may file briefs with post-hearing findings of facts and conclusions of law.   See, 12 C.F.R. § 308.35 and 308.36.

Within 45 days after the expiration of time allowed for the filing of post-hearing submissions, the ALJ must issue a recommended decision with findings of fact, conclusions of law, and a proposed order.   See, 12 C.F.R. § 303.38.   The parties may file exceptions to the ALJ's recommended decision within 30 days after the decision is issued.   See, 12 C.F.R. § 303.39.   Once the record is complete, the case is transmitted to the FDIC Board of Directors for final decision. The Board then has 90 days to issue a final agency decision.   After the agency issues its final decision, a respondent may, within 30 days, appeal the decision to the United States Court of Appeals.   See, 12 U.S.C. §1818(h)(2).

In this progression, Doral would have the opportunity to obtain judicial review if and when the FDIC makes a determination that it violated the Consent Order as a result of its compliance with the state court's Judgment of April 19, 2012.   What it would not have, is access to federal court at a time of its choosing irrespective of the jurisdictional constraints Congress established in Section §1818.

Doral argues the Court should rely on the "statutory authority exception" to jurisdictional bars first identified by the Supreme Court in Leedom v. Kyne, 358 U.S. 184 (1958).   Otherwise,

Doral posits, it will be wholly deprived of a meaningful and adequate means of vindicating its

rights in violation of the Due Process Clause of the Fifth Amendment. See, Docket No. 40 at p.

10.  The premise upon which the argument is construed is incorrect, since Doral may seek judicial

review as part of a process with full procedural guarantees under the circumstances delineated

earlier.  Notwithstanding, the Kyne statutory exception does not apply.

In Kyne, the Supreme Court held that a federal district court had jurisdiction to review a

certification decision issued by the National Labor Relations Board that directly conflicted with a

provision of the National Labor Relations Act, despite the absence of express authorization for

judicial review of such determinations.   Kyne, 358 U.S. at 188-89.   The Kyne "statutory

exception," however, is a "narrow" one.

For the exception to apply, Congress must not have clearly intended to preclude review of

the agency's particular determination.  Bd. of Governors of Fed. Reserve Sys. v. MCorp Financial,

Inc., 502 U.S. 32, 43 (1991).  If Congress intended otherwise, the exception would not apply.  To

that end, congressional intent to preclude review must be clear and convincing; it is not enough

for the agency to merely contend "that a statutory provision that provide[s] for judicial review

implie[s], by its silence, a preclusion of review of the contested determination." Id.

None of the circumstances in Kyne are present here.  Whereas in Kyne the National Labor

Relations Act was silent as to the availability of judicial review, here Congress "spoke[] clearly

and directly" in Section 1818(i)(1) that "*no court shall have jurisdiction to affect by injunction or

otherwise the issuance or enforcement of any [Board] notice or order under this section.*" MCorp.

Financial, Inc., 502 U.S. at 44 (quoting Section 1818(i)(1)) (emphasis in original).[11]  For the same

---

[11] Similarly, Doral does not argue that the FDIC acted beyond its authority in entering into the Consent Order.  To the contrary, the parties agree the Consent Order was issued pursuant to the FDIC's statutory authority under Section 1818(b).

reason, the exception for judicial review carved out in <u>Kyne</u> does not operate to justify jurisdiction over the present action.

Doral claims the Puerto Rico Supreme Court held in <u>Ponce Fed. Bank</u> v. <u>Chubb Life Ins. Co.</u> 155 D.P.R. 309 (2001), that the only court with jurisdiction to enforce a bank regulatory agency's order such as the Consent Order is the United States District Court.  <u>See</u>, Docket No. 19 at p. 4.[12]  In that case, Ponce Fed. Bank sought enforcement of a consent agreement between the defendant in that case and the Office of Thrift Supervision ("OTS").  Reversing the lower court, the Supreme Court of Puerto Rico held that only the OTS had standing to enforce a consent order.

In reaching that conclusion, the Court expressed that ". . .Congress specifically provided in the statue that 'no court shall have jurisdiction' so that no court, federal or state, has jurisdiction to execute any order of the OTS, which arises from a consent decree, unless OT[S] itself so requests it, at its discretion, to the federal district court." <u>Id.</u> at 330.  The holding is not only consistent with this Court's conclusion that Section 1818(i) precludes Doral from suing to affect or seek review of the Consent Order, but confirms that subject matter jurisdiction does not exist.

B.  <u>Section 1819</u>

Doral argues jurisdiction exists under 12 U.S.C. § 1819(b)(2)(A) because it included the FDIC as a party, and all civil lawsuits in which the FDIC, in any capacity, is a party, are deemed to arise under the laws of the United States.  <u>Id.</u>[13]  It asserts the FDIC is an indispensable party

---

[12] A certified translation of the <u>Ponce Federal Bank</u> case was submitted by Doral at Docket No. 33 at pp. 3-13.

[13] Section 1819(b)(2)(A) states that "[e]xcept as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States."  Subsection (b)(2)(D), in turn, provides that, except as provided in subparagraph (E), any action "(i) to which the Corporation, in the Corporation's capacity as receiver of a State insured depository institution by the exclusive appointment by State authorities, is a party other than as a plaintiff;  (ii) which involves only the preclosing rights against the State insured depository institution, or obligations owing to, depositors, creditors, or stockholders by the State insured depository institution; and (iii) in which only the interpretation of the law of such State is necessary,  shall not be deemed to arise under the laws of the United States." 12 U.S.C. § 1819 (b)(2)(D).

because Doral is asking the Court to declare its rights, obligations, status and legal relations with the FDIC, the state court, the EQB, and SIGA under the Consent Order in light of the Judgment and subsequent orders issued by the state court, and there is a real possibility that the FDIC's rights might be affected in this litigation (Docket No. 19 at p. 5 and Docket No. 47 at pp. 2-3).

Doral cannot circumvent the jurisdictional restrictions of Section 1818(i)(1) through the simple expedient of including the FDIC in the litigation and labeling it an indispensable party. Section 1818(i)(1) precludes the Court from "affect[ing] by injunction or otherwise the issuance of enforcement of a notice or order…or to review, modify, suspend, terminate, or set aside any such notice or order" except in circumstances not present in this case.  12 U.S.C. § 1818 (i)(1). This is so regardless of whether the FDIC is a party.  Were it not so, the inclusion of the FDIC in litigation would render meaningless the jurisdictional prohibition to reach a result Congress did not intend.

Courts should avoid interpretations which would render statutory provisions meaningless. Brown v. United Airlines, 720 F.3d 60, 68-69 (1st Cir. 2013).  A plaintiff may not avoid the jurisdictional bar by strategically naming a party (FDIC), to make an end run around a statutory prohibition.  Acosta-Ramírez v. Banco Popular de Puerto Rico, 712 F.3d 14, 20 (1st Cir. 2013).

## IV. CONCLUSION

When Congress decides to withdraw jurisdiction from the lower federal courts, the judicial inquiry is confined to ascertaining whether the action before the Court falls within the class of controversies that Congress intended to remove from judicial review.  First Nat. Bank of Nova Scotia v. United States, 530 F.Supp. 162, 167 (D.D.C. 1982).  Jurisdictional statutes are due to be construed "with precision and fidelity to the terms by which Congress has expressed its wishes."

Palmore v. United States, 411 U.S. 389, 396 (1972); Henry v. Office of Thrift Supervision, 835 F.Supp. 583, 584 (D. Kansas 1993).

Examination of jurisdictional authority begins, and largely ends, with the plain language of the statutory text.  The Court is not free to fashion its own exception to the clear, preclusive language of the statute. Congress unequivocally divested federal courts of jurisdiction over matters such as the one Doral has brought to the Court's attention.  Exercising jurisdiction would be wholly unwarranted in light of the carefully calibrated scheme established in 12 U.S.C. § 1818.  The jurisdictional bar applies to actions for declaratory judgment, and for injunctive relief.  Groos Nat'l Bank, 573 F.2d at 895.  Therefore, the case should be dismissed for lack of subject matter jurisdiction.

Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 11th day of September, 2014.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge